# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FRIEDA ZEIDEL, individually and on behalf of a class of similarly situated individuals,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| | ) 18 CV 06792 |
| v. | )<br>) Judge John Z. Lee |
| **NATIONAL GAS & ELECTRIC, LLC, a Texas limited liability company,** | )<br>)<br>) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Frieda Zeidel filed this lawsuit, on behalf of herself and a putative class, against Defendant National Gas & Electric, LLC ("National Gas") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Zeidel claims that National Gas made multiple unauthorized calls to her cellphone using an automated telephone dialing system ("ATDS") in violation of the TCPA. 47 U.S.C. § 227(b). National Gas moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion [28] is denied.

## **Background[1]**

This case arises out of a series of "numerous" calls made to Zeidel's cellphone by National Gas beginning in August 2018. Am. Compl. ¶¶ 15, 17, ECF No. 22. Upon answering one such call, Zeidel was "automatically connected" to an operator who identified herself as a representative of National Gas and attempted to sell Zeidel discounted services. *Id.* ¶ 16. Zeidel never provided

---

[1] The following facts are taken from Zeidel's amended complaint, and they are accepted as true on review of the motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

1

written consent to receive these calls, which also appeared to have been made using "spoofed" numbers.[2] *Id.* ¶¶ 17, 18. Additionally, Zeidel claims that National Gas made similar telemarketing calls to other similarly situated individuals, also without their consent. *Id.* ¶¶ 19–20. Zeidel further alleges that these calls were made using an ATDS in violation of the TCPA. *Id.* ¶¶ 1, 13. Specifically, she alleges that National Gas's system "has the capacity to store and/or produce telephone numbers to be called, using a random or sequential number generator," and did so when calling her and the putative class. *Id.* ¶ 14.

### **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[2] "Spoofing" refers to the deliberate falsification of caller identification information in order to disguise the caller's identity. *Spiegel v. Engagetel*, No. 1:15-cv-01809, 2016 WL 5477529, at *1 n.2 (N.D. Ill. Sept. 29, 2016).

2

## Analysis

National Gas moves to dismiss Zeidel's complaint for failure to state a claim under Rule 12(b)(6), arguing that Zeidel has not pleaded facts sufficient to allow the Court to draw a reasonable inference that National Gas called her cellphone using an ATDS. Def.'s Mem. Supp. Mot. Dismiss at 1, ECF No. 29.

To state a claim under the TCPA, a plaintiff must allege that the defendant made a call to her cellphone using an ATDS. 47 U.S.C. § 227(b). As defined by the TCPA, an ATDS is a device with the capacity to store or produce telephone numbers, either randomly or sequentially, and to actually dial those numbers. *Id.* § 227(a)(1). Furthermore, the device must have the present, as opposed to merely potential, capacity to function as an ATDS, *see ACA Int'l v. FCC*, 885 F.3d 687, 695–700 (D.C. Cir. 2018), as well as the ability to produce numbers using a random or sequential number generator, as opposed to merely dialing numbers from a stored list, *see Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 936–40 (N.D. Ill. 2018).[3]

As a preliminary matter, National Gas argues that Zeidel failed to allege that Defendant called her at all, much less used an ATDS. National Gas faults Zeidel's amended complaint for not alleging "(1) Plaintiff's phone number; (2) the phone number from which the calls came and whether that number is associated with [National Gas]; (3) what day the calls allegedly occurred; [or] (4) how many calls were made." Mem. Supp. Mot. Dismiss at 2. Although courts in this district have not required plaintiffs to specify the phone numbers involved in TCPA claims, they

---

[3] The TCPA further prohibits the knowing transmission of falsified caller identification information, sometimes referred to as "spoofing," with the intent to "defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1); *see also Spiegel*, 2016 WL 5477529, at *1 n.2. Although Zeidel alleges that the calls were made from "spoofed" numbers, her complaint and National Gas's motion to dismiss focus on the alleged violation of § 227(b) through the use of an ATDS for unauthorized telemarketing calls. As such, this opinion likewise focuses on assessing the § 227(b) claim.

have taken different approaches as to whether plaintiffs must plead the exact number of calls and their content. *Compare Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013) (finding that a plaintiff needed to plead information about the number, timing, and content of the alleged calls), *with Yates v. Checker's Drive-In Rests. Inc.*, No. 17-cv-9219, 2018 WL 3108889, at *2 (N.D. Ill. June 25, 2018) (rejecting a defendant's argument that the plaintiff must specify the exact dates or phone numbers for each violation of the TCPA), *and Salam v. Lifewatch, Inc.*, No. 13 CV 9305, 2014 WL 4960947, at *2 (N.D. Ill. Sept. 22, 2014) (denying a motion to dismiss where the plaintiff provided details as to one call that he received from the defendant).

Here, the Court finds that Zeidel has provided sufficient facts to allow a reasonable inference that National Gas called her at least once, if not multiple times. She has provided a timeframe and details about the content of one such call, which included promotion of National Gas's services. Am. Compl. ¶¶ 15–17. The additional facts that National Gas requests can be ascertained during discovery; at this preliminary stage, Zeidel's allegations are sufficient to nudge her claim from merely conceivable to plausible. *See Twombly*, 550 U.S. at 570.

Next, National Gas argues that Zeidel failed to allege that it used an ATDS to call her. Again, courts in this district have adopted differing views of the requirements for pleading a TCPA violation. Some courts have suggested that plaintiffs must allege only the use of an ATDS as defined in the statute, without supporting facts. *See Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) ("[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used."); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010–11 (N.D. Ill. 2010) (finding allegations that the defendants "used 'equipment with the capacity to store or produce

telephone numbers to be called, using a random or sequential number generator'" sufficient to survive a motion to dismiss).

Other courts have found that alleging the mere statutory definition of an ATDS without further descriptive details is too conclusory to withstand a motion to dismiss. *See Serban v. CarGurus, Inc.*, No. 16 C 2531, 2016 WL 4709077, at *3–4 (N.D. Ill. Sept. 8, 2016); *Hanley*, 934 F. Supp. 2d at 984 (N.D. Ill. 2013). These courts require a plaintiff to present additional facts supporting a reasonable inference that the defendant used an ATDS, such as a description of the communication's generic, promotional content, *see Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016), or hearing a pause before being connected to an operator, *see Oliver v. DirecTV, LLC*, No. 14-CV-7794, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015); *see also Hanley*, 934 F. Supp. 2d at 983–84 (dismissing a complaint alleging that the defendant "called [plaintiff's] cellular telephone on multiple occasions over the past four years using an ATDS" without supporting facts).

Zeidel's complaint alleges sufficient facts to survive under either standard. Although the complaint does recite the TCPA's definition of an ATDS, it also includes further details about the content and nature of the calls, which support a reasonable inference that National Gas used an ATDS to make unauthorized calls to Zeidel and other similarly situated individuals. First, Zeidel alleges that beginning in August 2018, National Gas made "numerous" unsolicited telemarketing calls to her cellphone in violation. Am. Compl. ¶¶ 16–17. Although she does not specify an exact number of calls, the TCPA prohibits making "any call" using an ATDS without the recipient's prior consent. 47 U.S.C. § 227(b). Second, Zeidel provides information about the generic, promotional content of the calls, which marketed National Gas's discounted services. Am. Compl. ¶¶ 16, 19; *see Serban*, 2016 WL 4709077, at *3–4 (finding allegations of "generic, promotional content"

supportive of an inference of the use of an ATDS). Third, Zeidel further alleges that these calls came from two different "spoofed" numbers. Am. Compl. ¶ 17. In addition to violating the TCPA's prohibition on falsified caller identification information, 47 U.S.C. § 227(e)(1), the use of "spoofed" numbers can also suggest the use of an ATDS. *See Spiegel*, 2016 WL 5477529, at *1–4 (denying a motion to dismiss where the plaintiff alleged a TCPA violation based on repetitious "scam" marketing calls made with "spoofed" numbers). Taken together in the light most favorable to Zeidel, as is required, *see Lavalais*, 734 F.3d at 632, these facts allow the Court to draw a reasonable inference that National Gas used an ATDS.

Nonetheless, National Gas argues that, even if Zeidel's allegations are otherwise sufficient, they suggest only that Zeidel was called using a "predictive dialer" rather than an ATDS. Mem. Supp. Mot. Dismiss at 5. Predictive dialers include a wide variety of devices, some of which do not qualify as an ATDS under the TCPA because they lack the capacity to randomly or sequentially generate numbers to dial. *See Pinkus*, 319 F. Supp. 3d at 936–40. National Gas analogizes this case to *Pinkus*, where the court granted the defendant's Rule 12(c) motion for judgment on the pleadings based on the plaintiff's allegations that he had been "automatically connected" to an operator after answering a call made using "predictive dialing technology." 319 F. Supp. 3d at 931. National Gas argues that Zeidel's allegation of being "automatically connected" to an operator after answering the call indicates merely a predictive dialer, rather than an ATDS. Mem. Supp. Mot. Dismiss at 5. But unlike the plaintiff in *Pinkus*, Zeidel's complaint makes no reference to "predictive dialing technology" at all. *See* 391 F. Supp. 3d at 391. Instead, it claims that National Gas used an ATDS to call Zeidel and others for telemarketing purposes. Am. Compl. ¶ 1. Thus, *Pinkus* is inapposite. *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) ("[I]f a plaintiff pleads facts which show he has no claim, then he has pled himself out of court.").

6

Moreover, the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call. Such a determination requires information about the technical details of the device that the defendant used to make the calls—information that the plaintiff lacks prior to discovery. It is for this reason that a plaintiff need not provide specific, technical details about the device at issue at the pleading stage. *Hayes*, 2018 WL 4616309, at *7; *Izsak*, 191 F. Supp. 3d at 904; *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (explaining that although a plaintiff must plead some facts indicating the use of an ATDS, it would be "unreasonable to require a TCPA plaintiff to elaborate on the specific technical details of a defendant's alleged ATDS").

Finally, to the extent that National Gas believes that the complaint must allege that Zeidel asked it to stop calling her, it is mistaken. Prior express consent is an affirmative defense under the TCPA, on which the defendant bears the burden of proof. *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017); *Franklin v. DePaul Univ.*, No. 16 C 8612, 2017 WL 3219253, at *4 (N.D. Ill. July 28, 2017). And even a single call made using an ATDS without prior consent violates the TCPA. 47 U.S.C. § 227(b) ("It shall be unlawful for any person . . . to make *any call*" using an ATDS) (emphasis added).

In sum, Zeidel's allegations adequately state a claim under Rule 12(b)(6). Zeidel has alleged facts sufficient to claim that National Gas made unauthorized calls to Zeidel's cellular telephone using an ATDS in violation of the TCPA.

## **Conclusion**

For the reasons stated herein, the defendant's motion to dismiss is denied.

**IT IS SO ORDERED.**                    ENTERED  5/17/19

*[signature: John Z. Lee]*

**John Z. Lee**
**United States District Judge**